**FORMER EMPLOYEES OF STANLEY SMITH, INC., Plaintiffs,**

v.

**UNITED STATES SECRETARY OF LABOR, Defendant.**

**Slip Op. 96–31.**
**Court No. 93–08–00456.**

United States Court of International Trade.

Feb. 6, 1996.

Frank W. Hunger, Assistant Attorney General, Washington, DC; David M. Cohen, Director; Mary L. Smith, Attorney, Commercial Litigation Branch, Civil Division, Dept. of Justice; Attorneys, for Defendant.

### OPINION

POGUE, Judge:

Plaintiffs, former employees of Stanley Smith Security, Inc.("Former Employees") contest the decision of the Department of Labor, Office of Trade Adjustment Assistance ("Labor"), denying Plaintiffs' petition for certification of eligibility for trade adjustment assistance benefits. Plaintiffs move for summary judgment,[1] contending that Labor's negative determination is not supported by substantial evidence, and that Labor failed to investigate the specific training and duties involved in the Former Employees' jobs. The Court holds that Labor's denial of certification is supported by substantial evidence and is in accordance with law.

### FACTS

Plaintiffs are the former employees of Stanley Smith Security, Inc. working at the Trojan Nuclear Plant, Rainier, Oregon.[2] The Trojan Nuclear Plant ("Trojan") produced electricity using heat from the nuclear fission process. Portland General Electric ("PGE") was the majority owner and operator of the plant. (R. at 6.)

In developing its 1992 Integrated Resource Plan, PGE decided to phase out Trojan in 1996 rather than replace steam generators that were experiencing micro flaws in their heat transfer tubes. Then, on November 9, 1992, a leak in a steam generator tube was detected. This incident increased operating costs. (R. at 104.) The availability of better contractual terms and of surplus electricity, particularly from California and Canada, made purchased power more attractive. Consequently, on January 4, 1993 PGE decided to cease power production at the Trojan Nuclear Plant immediately rather than in 1996. (R. at 129–30.) Former employees of PGE working at Trojan and at PGE, Portland, Oregon, were certified eligible to apply for adjustment assistance in April 1993 (TA–W–28,438 and TA–W–28, 438A). (R. at 159).

On February 25, 1993, Plaintiffs filed a petition under Section 221(a) of the Trade Act of 1974, as amended, 19 U.S.C. § 2271 (1994), requesting trade adjustment assistance ("TAA"). (R. at 2–7.)

Labor commenced an investigation of Plaintiffs' eligibility for trade adjustment as-

---

1. The Court will treat Plaintiffs' motion for summary judgment as a motion for judgment upon the agency record, USCIT R. 56.1(a).

2. Former Employees are represented by Michael J. Bender. On Aug. 3, 1994, this Court granted Mr. Bender leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). Michael P. Maxwell was appointed to serve without fee and to appear generally on behalf of Mr. Bender, as his attorney and counselor at law.

sistance on March 15, 1993 (TA–W–28,442).[3] The investigation revealed the following additional facts: Stanley Smith Security, Inc. ("Stanley Smith"), headquartered in San Antonio, Texas, operated at various locations in 29 states; Stanley Smith contracted with PGE to provide security at the Trojan plant; Stanley Smith's employees at the Trojan site consisted of a manager, an assistant, two clerks, and approximately 120 armed security agents; they were paid directly from Stanley Smith headquarters in San Antonio; Stanley Smith provided for their training and supervision; the workers were employed solely to provide security services and were not involved in the production of electricity. (Investigative Report, R. at 159–60.) The confidential version of the administrative record reveals that Stanley Smith provided contractual security services; that Stanley Smith did not perform earlier or later stages of processing in the production of electricity; that PGE did not have any authority regarding Stanley Smith employees; that Stanley Smith paid and maintained benefits for its employees; and that payroll transactions and personnel actions were controlled solely by Stanley Smith. (C.R. at 163–64.)

Based on the investigation, on May 10, 1993 Labor denied eligibility to apply for adjustment assistance.[4] Labor explained that service workers "may be certified only if their separation was caused importantly by a reduced demand for their services from a parent firm, a firm otherwise related ... by ownership, or a firm related by control."

Negative Determination Regarding Eligibility To Apply For Worker Adjustment Assistance, 58 Fed.Reg. 30072 (May 25, 1993). (R. at 167–69.)

On June 1, 1993, Plaintiffs requested reconsideration of Labor's negative determination, stressing that security services at a nuclear facility are in the direct line of production of electricity, because security plans must be maintained as a condition of the license to operate and produce electricity. (R. at 174.)

Labor confirmed its initial negative determination on June 24, 1993, commenting that "[t]he worker adjustment assistance was not intended to provide TAA to workers who are in some way related to import competition but only for those workers who produce an article and are adversely affected by increased imports of like or directly competitive articles which contributed importantly to sales or production." Notice of Negative Determination Regarding Application for Reconsideration, 58 Fed.Reg. 35982 (July 2, 1993). (R. at 197–98.)

This action was initiated by a letter complaint dated August 2, 1993. The issue presented is whether Labor's negative determination is supported by substantial evidence on the administrative record, and is otherwise in accordance with law.

## JURISDICTION AND STANDARD OF REVIEW

Pursuant to 19 U.S.C. § 2395 (1994)[5] and

---

3. The petition was considered in relation to the other petition filed by PGE workers at the Trojan Nuclear Plant, Rainier, Oregon (TA–W–28,438). (Petition Verification, R. at 149.)

4. Section 222 of the Trade Act of 1974, 19 U.S.C. § 2272, as amended, provides:
   (a) The Secretary shall certify a group of workers ... as eligible to apply for adjustment assistance under this subpart if he determines—
   (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated,
   (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and
   (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropri-

ate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.
   (b) For purposes of subsection (a)(3) of this section—
   (1) The term "contributed importantly" means a cause which is important but not necessarily more important than any other cause.
   . . . .

5. 19 U.S.C. § 2395 provides:

   . . . .
   (b) Findings of fact by Secretary; conclusiveness; new or modified findings
   The findings of fact by the Secretary of Labor or the Secretary of Commerce, as the case may be, if supported by substantial evidence, shall be conclusive; but the court, for good cause

28 U.S.C. § 1581(d)(1) (1988 & Supp.1993),[6] the Court has exclusive jurisdiction to review Labor's final determination regarding the eligibility of workers for adjustment assistance under section 223 of the Trade Act of 1974, as amended, 19 U.S.C. § 2273 (1994).

The scope and standard of review in the present case is prescribed by 28 U.S.C. § 2640(c) (1988 & Supp.1993) and 19 U.S.C. § 2395 (1994). Judicial review is on the administrative record and Labor's findings of fact, if supported by substantial evidence, are conclusive. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). At the same time, substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966).

### DISCUSSION

When investigating a petition for certification of eligibility for trade adjustment assistance, Labor must determine whether the group of workers meets the adjustment assistance eligibility requirements set forth in 19 U.S.C. § 2272.[7] In the present case, Labor determined that Plaintiffs were not eligible for trade adjustment assistance because they failed to meet the requirements of § 2272(a)(3).

Plaintiffs challenge Labor's determination, claiming that Labor failed to investigate the specific training and duties involved in the Former Employees' job, and to determine the purpose of their work in relation to the production of electricity. (Plaintiffs' Memorandum at 6.) Indeed, Plaintiffs explain that they were integral to the production of electricity because they were "central and pivotal" to such production, and their role was essential. (*Id.* at 9.) As such, even assuming that their work cannot be characterized as *production*, they are entitled to assistance, because they were involved in the production of an article. (*Id.* at 6–7, 10–11.)

To this effect, Plaintiffs invoke the authority of *Abbott v. Donovan*, 6 CIT 92, 570 F.Supp. 41 (1983). In *Abbott*, Labor, while certifying the workers employed in two departments, had excluded other workers who

---

shown, may remand the case to such Secretary to take further evidence, and such Secretary may thereupon make new or modified findings of fact and may modify his previous action, and shall certify to the court the record of the further proceedings. Such new or modified findings of fact shall likewise be conclusive if supported by substantial evidence.
(c) Determination; review by Supreme Court
    The Court of International Trade shall have jurisdiction to affirm the action of the Secretary of Labor or the Secretary of Commerce, as the case may be, or to set such action aside, in whole or in part....

6. 28 U.S.C. § 1581(d)(1) provides:
    The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review—
        (1) any final determination of the Secretary of Labor under section 223 of the Trade Act of 1974 with respect to the eligibility of workers for adjustment assistance under such Act.

7. *See supra*, note 4. The Trade Act of 1974 was intended "to foster the economic growth of and full employment in the United States and to strengthen economic relations between the United States and foreign countries through open and nondiscriminatory world trade," 19 U.S.C. § 2102(1), as well as "to provide adequate procedures to safeguard American industry and labor against unfair or injurious import competition, and to assist industries, firm[s], workers, and communities to adjust to changes in international trade flows," 19 U.S.C. § 2102(4). Recognizing that increased imports could burden some domestic industries, Congress provided adjustment assistance for workers, firms, and communities injured by import competition. In fact, a group of workers can qualify for benefits including compensation, employment services, training, job search and relocation allowances, 19 U.S.C. § 2291–98, if the Secretary of Labor determines that the requirements for granting the benefits, enumerated under § 2272, are met.

    The purpose of the TAA program is to offset the negative effects on the work force whose jobs the company has eliminated. Congress intended to "encourage workers who are unemployed because of import competition to learn the new skills necessary to find productive employment in a changing American economy." S.Rep. No. 71, 100th Cong., 1st Sess. 11 (1987).

provided ancillary and support services to the certified departments. The court observed that the adjustment assistance provisions of the Trade Act of 1974 are silent regarding coverage for service workers, and similarly silent is the legislative history. Hence, "the court must accord substantial deference to the interpretation of the statute by the agency." *Id.* at 100, 570 F.Supp. 41. The court noted that Labor's interpretation of the Trade Act was oriented toward certifying service workers only when there was an important causal nexus between increased imports and the layoff of service workers. "That nexus is deemed to exist if a substantial amount of the service workers' activity was directly related to the production of the import-impacted article. For five years, the Department of Labor has implemented its interpretation of the statute by requiring that at least 25% of the service workers' activity be expended in service to the subdivision which produces the import-impacted article." *Id.* at 101, 570 F.Supp. 41.[8]

■ The present case is distinguishable from *Abbott.* Labor did not have to investigate the existence of the *important causal nexus* between increased imports and the Plaintiffs' layoffs; nor did Labor have to report on the percentage of service workers in relation to the production workers. Such investigation occurs only when the petitioning workers are *employed by a firm that produced, directly or through an appropriate subdivision, the import-impacted article.*[9] Here, the firm that produced the import-impacted article is PGE. Even though assigned to PGE's Trojan plant, Plaintiffs were employees of Stanley Smith and not of PGE.[10] Once Labor concluded that Plaintiffs' employer was not the firm that produced the import-impacted article (PGE), it could also conclude that the Former Employees were not eligible for assistance.[11]

It is true that, in order to maintain its license, the nuclear plant was required to keep a security system composed of officers specifically trained to perform tasks and duties in accordance with the "physical security plan."[12] It is also true that, in compliance with the federal regulations, some PGE employees supervised the security system implemented at Trojan, i.e., they supervised

8. The court remanded the case, because Labor had determined that the cost of services was significantly less than 25% of the cost of the work directed to production, neglecting, however, to include these data in the administrative record.

9. 29 CFR § 90 (1995) covers "certification of eligibility to apply for worker adjustment assistance." 29 CFR § 90.2, which contains the "definitions," provides:

...

*Appropriate subdivision* means an establishment in a multi-establishment firm which produces the domestic articles in question or a distinct part or section of an establishment (whether or not the firm has more than one establishment) where the articles are produced. The term *appropriate subdivision* includes auxiliary facilities operated in conjunction with (whether or not physically separate from) production facilities.

...

*Firm* includes an individual proprietorship, partnership, joint venture, association, corporation (including a development corporation), business trust, cooperative, trustee in bankruptcy, and receiver under decree of any court. A firm, together with any predecessor or successor-in-interest, or together with any affiliated firm controlled or substantially beneficially owned by substantially

the same persons, may be considered a single firm.

10. Plaintiffs have not presented allegations that Stanley Smith Security, Inc. is affiliated, controlled or owned by PGE, nor does the record reveal that PGE is or acts as Stanley Smith's *alter ego.* See 29 CFR § 90.2.

11. *See Woodrum v. Donovan,* 5 CIT 191, 564 F.Supp. 826 (1983), *aff'd,* 2 Fed. Cir. (T) 82, 737 F.2d 1575 (1984), where former employees of an automobile dealership challenged the denial of assistance contending that they were part of the production process for new automobiles because their labor was essential to the final delivery of the automobiles to the general public. The court observed that "[o]n occasion, the Secretary has certified service workers, but only where he has determined that they were integrated into the production of articles adversely affected by increased imports. The predicate for the determination is a finding that the petitioning workers were employed by a 'firm' which produced, or had an 'appropriate subdivision' which produced, the import-impacted article." *Id.* at 199, 564 F.Supp. 826.

12. 10 CFR 50.34(c) (1995); 10 CFR Ch. 1, App. B (1995).

Stanley Smith's employees.[13]  Finally, it may be equally true that the reduction of security officers matches the percentage reduction of PGE employees, and thus the net impact is virtually the same.  (Letter from PGE, R. at 177.)  However, there was no relationship between PGE and Stanley Smith other than a contractual one.[14]  The confidential record reports that PGE did not have any power to hire and fire them, nor any control other than supervision on their training.  (C.R. at 163–64.)  It is Stanley Smith that supervises, hires and fires its employees as conditions seem fit, and Stanley Smith is not owned or under the control of any of its other customers.[15]  Consequently, there is substantial evidence in the record in support of Labor's determination.  This Court does not analyze the relationship of the Former Employees' activity to the production of electricity, and whether they were service workers entitled to certification, because Plaintiffs were not employed by the firm that produced the import-impacted article, PGE.

Plaintiffs' allegations and defenses do not impinge on Labor's determination.  Even though the nature and extent of the investigation must be adequate to obtain the necessary information upon which to make a determination and meet a threshold requirement of reasonable inquiry, Labor's actions here were within the scope of its discretion. *Woodrum v. Donovan*, 4 CIT 46, 51, 544 F.Supp. 202 (1982), *aff'd*, 2 Fed. Cir. (T) 82, 737 F.2d 1575 (1984); *Former Employees of Hewlett–Packard Co. v. United States*, 17 CIT 980, 984 (1993).

### CONCLUSION

After considering the papers submitted herein, relevant case law as well as the administrative record, the Court holds that Labor's determination is supported by substantial evidence contained in the record, and is in accordance with the trade adjustment assistance provisions of the Trade Act of 1974.

Accordingly, Plaintiffs' motion for judgment upon the administrative record is denied, Labor's negative determination is affirmed, and this action is dismissed.

IT IS SO ORDERED.

---

**13.**  In the case of contract personnel, the regulations prescribe that the qualifications of each individual must be documented and attested by a licensee's security supervisor.  10 CFR Ch. 1, App. B, II.C.

**14.**  Plaintiffs recognize that their relationship with PGE and Trojan is a contractual one.

**15.**  *See* the CFR definitions of *appropriate subdivision* and of *firm*.  29 CFR § 90.2.