Slip. Op. 02-67

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

```
------------------------------------------------ x
FORMER EMPLOYEES OF                     :
MARATHON ASHLAND PIPELINE, LLC,

            Plaintiffs,                 :          Court No. 00-04-00171
                                                   Public Version
            v.
                                        :
ELAINE CHAO, UNITED STATES
SECRETARY OF LABOR,

            Defendant.                  :
------------------------------------------------ x
```

[Plaintiffs' motion to certify employees for trade adjustment assistance denied, and case remanded for further consideration of whether Plaintiffs "produced" an article within the provisions of the statute and whether increased imports contributed importantly to their separation.]

Decided: July 16, 2002

*Katten, Muchin & Zavis*, *(Marianne Rowden, James L. Sawyer)* for Plaintiff.

*Robert D. McCallum*, *Jr.*, Assistant Attorney General, *David M. Cohen*, Director; *Lucius B. Lau*, Assistant Director; (*Michele D. Lynch*, *Delfa Castillo*), Commercial Litigation Branch, Civil Division, Department of Justice; *Gary E. Bernstecker*, Attorney, Office of the Solicitor, Division of Employment & Training Legal Service, U.S. Department of Labor.

## OPINION

### I. INTRODUCTION

This case is before the court on Plaintiffs' motion for judgment upon the administrative record pursuant to USCIT Rule 56.1(c)(1). Plaintiffs seek judicial review of the Secretary of Labor's ( the "Secretary" or "Labor") denial of certification for trade adjustment assistance (TAA) under Section 222 of the Trade Act of 1974, ( the "Act"), as amended and codified at 19

U.S.C. § 2272 (1994). *See Notice of Determination Regarding Eligibility to Apply for Worker Adjustment Assistance and* NAFTA *Transitional Adjustment Assistance* ("*Determination*"), 64 Fed. Reg. 72690, 72691 (Dep't of Labor Dec. 2, 1999), *reconsideration denied*, 65 Fed Reg. 8743 (Dep't of Labor Feb. 22, 2000). Plaintiffs are former Marathon Ashland Pipeline workers who were employed as gaugers, who state that they performed the functions, *inter alia*, of testing and determining the quality of crude oil to be purchased and transported. The Secretary determined that the Plaintiffs did not satisfy the statutory criteria under 19 U.S.C. § 2272(a)(3). The Secretary then voluntarily asked for remand of her negative determination to acquire additional information regarding the transportation of articles produced by the parent company of Plaintiffs' employer, Marathon Ashland Pipe Line LLC ("Marathon Ashland")*.* The Secretary's *Notice of Negative Determination of Reconsideration on Remand* ("*Remand Determination*"), 66 Fed. Reg. 52784 (Dep't of Labor Oct. 17, 2001), again denied plaintiffs' petition for certification. Plaintiffs contend the Secretary's initial Determination and Remand Determination are unsupported by substantial evidence and not in accordance with law. Plaintiffs initially claimed that the Secretary failed to investigate: 1) the actual nature of the work performed by the Plaintiffs; 2) whether Plaintiffs' separations were caused by a reduced demand for their services from their parent firm, or a firm otherwise related, whose workers independently meet the statutory criteria for certification under the Act; and 3) whether increased imports of crude oil contributed importantly to Plaintiffs' separations. Following the Secretary's Remand Determination, Plaintiffs reassert all original arguments and additionally claim that the Secretary failed to request information concerning: 1) Marathon Oil Company's ("Marathon Oil") (Marathon Ashland's parent company) importation of foreign oil between 1997 and 1999; 2) the

extent to which the importation of oil by Marathon Oil caused or contributed to Marathon Ashland's decrease in domestic oil production and sales; 3) the basis for Marathon Oil's cessation of purchasing oil from the Illinois Basin Area; and 4) the nexus between Marathon Ashland's activities and the crude oil purchased or produced by its parent or related companies. Plaintiffs ask that the Secretary's determination be reversed or, in the alternative, remanded back to the Department for further investigation.

The court has jurisdiction pursuant to 28 U.S.C. § 1581(d)(1) (1994) to review the Department of Labor's final determination regarding eligibility of workers for TAA under Section 223 of the Trade Act of 1974, as amended, 19 U.S.C. § 2273 (1994).

After reviewing the administrative records and the briefs of the parties, the court again remands the action to the Secretary for further proceedings in accordance with this opinion.

## II. BACKGROUND

On October 23, 1999, Plaintiffs filed a petition for TAA with the Department of Labor under Section 221(a) of the Act on behalf of Operations Technicians at Marathon Ashland. *See Administrative Record* ("*A.R.*") at 1.[1] Marathon Ashland is a ["

."] *A.R.* at 18. Prior to the administrative review of Plaintiffs' petition, some of Marathon Oil Company's workers had been certified for TAA. Plaintiffs worked at Marathon Ashland's Bridgeport, Illinois, location and petitioned the Secretary for TAA after their separation from Marathon Ashland.

---

[1] *The Administrative Record* and the *Supplemental Administrative Record* contain confidential information. Therefore, citations to the confidential information will be bracketed.

The Secretary issued a *Notice of Investigation* on November 8, 1999, to determine if

Plaintiffs were eligible for TAA.  *See* 64 Fed. Reg. 69039.  Labor had to ascertain if "increased

imports have contributed importantly to actual or threatened decreases in employment and to

decreases in sales or production at the petitioning workers' plant."[2]  *A.R.* at 12.  To facilitate the

investigation, Labor sent an information request to Marathon Ashland's Human Resource

---

[2]  Labor's investigation is guided by the Trade Act of 1974, as amended 19 U.S.C. § 2272, which reads:

(a) The Secretary shall certify a group of workers (including workers in any agricultural firm or subdivision of an agricultural firm) as eligible to apply for adjustment assistance under this subpart if he determines–

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

(b) For purposes of subsection (a)(3) of this section–

(1) The term "contributed importantly" means a cause which is important but not necessarily more important than any other cause.

(2)(A) Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas shall be considered to be a firm producing oil or natural gas.

(B) Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas, or otherwise produces oil or natural gas, shall be considered to be producing articles directly competitive with imports of oil and with imports of natural gas.

Representative, Mike Leland, asking him to furnish specific information regarding Marathon

Ashland's organizational structure, sales, production, employment, and imports.  In Leland's

response he stated, *inter alia,* that [

] *See A.R.* at 16-18.  Based on Leland's response and

other information compiled from the investigation, the Secretary determined that Plaintiffs did

not "produce" an article within the meaning of Section 222(3) and their separation was not

"caused importantly by a reduced demand for services from a parent firm . . . ."[3]  *A.R.* at 24.  The

Secretary found that because "[t]he Department of Labor has consistently determined that the

performance of services does not constitute production of an article, as required by Section 222

of the Trade Act of 1974," Plaintiffs did not qualify for TAA benefits.  *Id.*

On December 16, 1999, Plaintiffs requested reconsideration of the negative

determination.  Plaintiffs asserted that their jobs involved more than merely transporting crude

oil.  Plaintiffs contended that their work as gaugers constituted "production" of an article

pursuant to Section 222 of the Act.  Plaintiffs argued that as gaugers they tested the crude oil and

determined if the oil "was of such quality as to be purchased by Marathon Oil Company and

transported into the pipe line maintained by Marathon Ashland Pipe Line LLC."  *A.R.* at 33.

---

[3]  [

] *A.R.* at 18.
Therefore, for statutory purposes, Marathon Ashland was a "subdivision" of Marathon Oil
Company.

Labor reviewed the application and determined: 1) the workers provided a service that was not covered by the Act; 2) although some Marathon Oil workers received TAA certification, Marathon Ashland did not serve the locations under existing certification; and 3) the Plaintiffs were terminated because of the sale of their firm's assets to another company. *Notice of Negative Determination Regarding Application for Reconsideration* ("*Determination Reconsideration* "), 65 Fed. Reg. 8743. Citing to the 1988 Omnibus Trade and Competitiveness Act amendments to the Trade Act of 1974, Labor explained that the amendments "extended coverage to service workers engaged in exploration and drilling for crude oil and natural gas." *Id*. Labor concluded that "[t]he same consideration cannot be given to those workers engaged in employment related to the transmission of crude oil or natural gas after drilling." *Id.* Therefore, Labor denied Plaintiffs' request for administrative review.

On January 24, 2001, Plaintiffs filed their Motion for Judgment on the Administrative Record with this court. On August 7, 2001, Labor sought a voluntary remand of its investigation. Noting that it had failed to conduct a complete investigation, Labor again contacted Leland for additional information regarding whether the gaugers supported crude oil production by Marathon Oil.[4] *Supplemental A.R.* at 5. The investigation on remand revealed that in 1997, 1998 and through March of 1999, Marathon Ashland Pipe Line did not transport via pipeline any articles produced by the parent company, Marathon Oil Company, Inc. *See Supplemental A.R.* at 6. The Secretary's investigation found that in 1997, the parent company purchased crude oil at

---

[4] Responses to the Secretary's investigation on remand were provided by company official, [                                                                              ], at Marathon Ashland. *Supplemental A.R.* at 3-4.

the Illinois Basin[5] that was transported by Marathon Pipe Line Company. *Id.* "In 1998, Marathon Ashland Petroleum LLC was formed and it purchased crude from the Basin which it transported via the pipeline." *Id.* In 1999, Marathon Ashland Petroleum LLC did not purchase from the lease (Illinois Basin). *See id.* On these findings, the Secretary affirmed her original notice of negative determination of eligibility to apply for TAA benefits for the former workers of Marathon Ashland Pipe Line, LLC.

### III. STANDARD OF REVIEW

Cases contesting the denial of trade adjustment assistance filed under 28 U.S.C. § 1581(d) must be upheld if the Department of Labor's determination is supported by substantial evidence and is otherwise in accordance with law. *See* 19 U.S.C. § 2395(b); *Woodrum v. Donovan,* 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), *aff'd*, 737 F.2d 1575 (Fed. Cir. 1984). The factual findings of the Secretary must be accepted if supported by "substantial evidence." "Substantial evidence has been held to be more than a 'mere scintilla,' but sufficient enough to reasonably support a conclusion." *Former Employees of Swiss Industrial Abrasives v. United States*, 17 CIT 945, 947, 830 F. Supp. 637, 639-40 (1993) (citing *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), *aff'd*, 810 F.2d 1137 (Fed. Cir. 1987)). "Additionally, 'the rulings made on the basis of those findings [must] be in accordance with the statute and not be arbitrary and capricious, and for this purpose the law requires a showing of reasoned analysis.'" *Former Employees of General Electric Corp. v. U.S. Dep't of Labor*, 14 CIT 608, 610-11 (1990) (quoting *International Union v. Marshall*, 584 F.2d 390, 396 n.26 (D.C.

---

[5] The Illinois Basin is one of Marathon Oil's domestic sources for crude oil. *A.R.* at 1.

Cir. 1978).

Furthermore, this court has noted that "'because of the *ex parte* nature of the certification process, and the remedial purpose of the [trade adjustment assistance] program, the Secretary is obliged to conduct his investigation with the utmost regard for the interests of the petitioning workers.'" *Abbott v. Donovan*, 7 CIT 323, 327-28, 588 F. Supp. 1438, 1442 (1984) (quoting *Local 167, International Molders and Allied Workers' Union v. Marshall*, 643 F.2d 26, 31 (1st Cir. 1981).

The court may remand a case and order further investigation if the court finds that the Secretary's investigation was "so marred that [the Secretary's] finding was arbitrary, or that it was not based upon substantial evidence." *Finkel v. Donovan*, 9 CIT 374, 381, 614 F. Supp. 1245, 1251 (1985).  Thus, in the event that the Secretary fails to reach a substantiated conclusion, a remand is warranted because the Secretary failed to conduct an adequate investigation. *See Former Employees of Linden Apparel Corp. v. United States*, 13 CIT 467, 469, 715 F. Supp 378, 381 (1989).  However, in evaluating the evidence underlying the Secretary's conclusions, the court may consider only the administrative record before it.  *See* 28 U.S.C. § 2640(c) (1994); *International Union v. Reich*, 22 CIT 712, 716, 20 F. Supp. 2d 1288, 1292 (1998).

### IV. DISCUSSION

Pursuant to 19 U.S.C. § 2272 (1994) for workers to be certified for trade adjustment assistance the Secretary of Labor must determine:

(1)  that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that the sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272(a).

To receive trade adjustment assistance benefits, Plaintiffs must satisfy all three eligibility requirements of the statute. *See Former Employees of Keinerts, Inc. v. Herman,* 23 CIT 647, 648, 74 F. Supp. 2d 1280, 1282 (1999); *Former Employees of Bass Enter. Prod. Co. v. United States,* 13 CIT 68, 70, 706 F. Supp. 897, 900 (1989); *Abbott v. Donovan*, 8 CIT 237, 239, 596 F. Supp. 472, 474 (1984) (stating that a court must deny certification if any one of the three statutory conditions does not exist).

At issue in this case is whether there is substantial evidence in the administrative record to support the Secretary's determination that the workers of Marathon Ashland Pipe Line LLC, in Bridgeport, Illinois, are ineligible to apply for adjustment assistance benefits. The Secretary issued a negative determination asserting that Marathon Ashland workers failed to satisfy the two requirements within 19 U.S.C. § 2272(a)(3): first, the section requires that Plaintiffs must be workers of a firm or an appropriate subdivision of a firm that "produce[s]" articles; second, that in order for Plaintiffs to be eligible for trade adjustment assistance benefits, "increases of imports of articles like or directly competitive with the articles produced by [Plaintiffs'] firm or . . . appropriate subdivision . . . contributed importantly to [their] total or partial separation . . . and to [their firm's or appropriate subdivision's] decline in sales or production." Thus, it follows that the section's certification requirements are satisfied if it is established that a group of workers

produces an "article" within the meaning of the statute, and an imported article like or directly competitive with the article produced by the workers' firm or subdivision contributes importantly to the loss of such workers' jobs.

      *A.      The Secretary Failed to Adequately Investigate Whether Plaintiffs Are Workers of a Firm or an Appropriate Subdivision of a Firm That "Produce[s]" Articles.*

Labor contends that the petitioning employees fail to satisfy the criteria set forth in 19 U.S.C. § 2272(a) because they ["

."] *Def.'s Resp. to Pls.' First Am. Reply to Def.'s Notice of Negative Determination of Reconsideration on Remand ("Def.'s Resp. to Remand")* at 11. Defendant asserts that this conclusion was affirmed and then re-affirmed by information gathered during the Secretary's initial investigation and the investigation upon remand. Defendant states that this finding is made clear through statements in the administrative record,[6] and thus, the Secretary's determination is supported by substantial evidence and is in accordance with law.

The court finds that the Secretary's negative determination is not supported by substantial evidence, because the Secretary made the unsubstantiated conclusion that the petitioning employees did not "produce" an article within the meaning of Section 2272. "When Labor is presented with a petition for trade adjustment assistance, it has an affirmative duty to investigate whether petitioners are members of a group which Congress intended to benefit from

_____

[6] Citing information provided by Leland: ["

."] *Def.'s Resp. to Remand* at 12; *A.R.* at 17.

the legislation." *Former Employees of Hawkins Oil and Gas, Inc. v. U.S. Secretary of Labor,* 17 CIT 126, 129, 814 F. Supp. 1111, 1114 (1993) (citations omitted). At best, the administrative record provides limited information discussing whether the Plaintiffs' duties as gaugers place them within the group of eligible import-impacted employees Congress intended to benefit from TAA. As such, this court cannot conclude that Labor has satisfied its requirement of reasonable inquiry, especially when viewed in light of the remedial purpose of the statute.

It is true that the court must grant deference to the Secretary of Labor's determination. *See Woodrum*, 564 F. Supp. at 828 (citations omitted). The court recognizes, however, the well established principle that "[n]o deference is due to determinations based on inadequate investigations." *Former Employees of Hawkins Oil and Gas, Inc.*, 814 F. Supp. at 1115 (citations omitted). Thus, if the court finds that the Secretary's investigation is so marred that it could not be based on substantial evidence, then it is within the court's power to remand the investigation for further evidence and inquiry. *Id.*

Labor's investigation falls below the threshold requirement of reasonable inquiry by failing to offer any explanation of the analysis used to determine that Plaintiffs' work as gaugers did not constitute "producing" an article within the meaning of Section 2272. *See id.* at 1114 (stating that Labor had a duty to provide an explanation of the criterion used to support its conclusion) (citing *Former Employees of Hawkins Oil and Gas, Inc. v. U.S. Secretary of Labor*, 15 CIT 653, 656 (1991)). In the context of TAA cases, this court has held that "conclusory assertions alone are not sufficient for Labor to make an accurate determination." *Bennett v. U.S. Secretary of Labor,* 18 CIT 1063, 1067 (1994); (citing *Former Employees of General Electric Corp.*, 14 CIT at 612-613).

Here, the Secretary based and affirmed her negative determination on conclusory assertions provided by company officials at Marathon Ashland. In doing so, the Secretary incorrectly omitted the requisite reasoned analysis, and instead substituted unsubstantiated statements. During Labor's initial investigation, Leland stated that the subject worker group ["

."] *A.R.* at 23. During Labor's further investigation,[7] the company official stated that during the time period in question, 1997-1999, the workers ["

."] *Supplemental A.R.* at 3.

Relying on these responses, the Secretary concluded that the gaugers did not participate in production.

Indeed, as Defendant notes, "'unverified statements from company officials in a position to know about their company's products and business decisions can be relied upon when there is no other evidence in the record to contradict or cast doubt upon those statements.'" *Former Employees of Alcatel Telecommunications Cable v. Herman*, 134 F. Supp. 2d 445, 449 (2001) (quoting *International Union*, 20 F. Supp. 2d at 1297 n.15 (citations omitted)). In the present case, however, evidence presented by the petitioning workers stating that they were involved in

---

[7] Upon remand Labor asked Marathon Ashland:

1. Did Marathon Pipe Line LLC, transport via pipeline any of the articles produced by the parent company, Marathon Oil Company, in 1997, 1998, or in the January through March months of 1998 and 1999?
2. If the above answer is yes, what percentage of your sales was represented by transporting crude oil or petroleum products for Marathon Oil Company in 1997, 1998, and the January through March months of 1998 and 1999?
3. If the answer to question 1 is yes, where did the Marathon Oil Company production originate? *Supplemental A.R.* at 1.

more than the mere transportation of crude oil, directly contradicts the company officials'

conclusions.  The subject workers specifically indicate in their petition that they worked with

["

."]  *A.R.* at 1.  Plaintiffs'

letter requesting administrative reconsideration and detailing the specific duties they performed

also conflicts with company officials' statements.  Such evidence moves this court to find that it

is unclear whether the gaugers were involved in the production of oil.  Thus, on these facts, the

court cannot affirm Labor's negative determination or find that Labor fulfilled its affirmative

duty to conduct its investigation with the utmost regard for the petitioning workers.  *See Former*

*Employees of Hawkins Oil and Gas, Inc.,* 814 F. Supp. at 1114 (citations omitted).

By failing to give a reasoned analysis for its determination that the gaugers did not

participate in production, Labor neglected its duty to interpret the meaning of "production" under

Section 2272.  If allowed to stand, the Secretary's negative determination would provide a

definition of "production" that excludes those duties performed by gaugers.  This definition,

however, essentially would be an interpretation of the statute by Marathon Ashland's company

officials, and not, as the law requires, by the Secretary.  Whether Plaintiffs provided a service and

did not participate in the "production" of an "article" within the provisions of Section 2272 is a

determination that the Secretary must make based on evidence in the record by discussing the

duties performed by the gaugers and how their responsibilities fit into the oil production scheme

of their parent company, Marathon Oil.

Even if the Secretary makes a reasoned determination that the gaugers do not participate

in the "production" of an "article," then the Secretary must investigate whether they may be

eligible for certification as "service" workers.  The court agrees that service workers may be certified for TAA benefits "[on] a finding that the petitioning workers were employed by a 'firm' which produced, or had an 'appropriate subdivision' which produced, the import-impacted article." *Woodrum,* 564 F. Supp. at 833.  Here, the petitioning gaugers may be eligible for TAA benefits if there exists an "important causal nexus" between increased imports and the loss of their jobs.  Labor has deemed this nexus to exist if "at least 25% of the service workers' activity [is] expended in service to the subdivision which produces the import-impacted article.'" *Former Employees of Stanley Smith*, *Inc. v. U.S. Secretary of Labor,* 20 CIT 201, 204, 967 F. Supp. 512, 516 (1996) (citing *Abbott*, 570 F. Supp. at 49).  As the Secretary stated, such service workers may be certified if their separation from employment was caused importantly by a reduced demand for their services from a production facility of the parent firm, *i.e.* one otherwise related to the subject firm by ownership or related by control, whose workers independently meet the statutory criteria for certification.  *See A.R.* at 37; *see also Nagy v. Donovan*, 6 CIT 141, 144, 571 F. Supp. 1261, 1263 (1983).

While Labor acknowledges this "causal nexus" test, Labor nevertheless fails to investigate the relevant facts: the nature of the work performed by Marathon Ashland gaugers in relation to production of an article by Marathon Oil.[8]  *See Pemberton v. Marshall*, 639 F.2d 798, 801-2 (D.C. Cir.1981) (stating that the facts that are "important . . . are the nature of the work

---

[8]  When Labor voluntarily remanded its investigation to further investigate whether the gaugers supported crude oil production of the parent company, Labor focused on whether Marathon Ashland transported articles *already* produced by Marathon Oil during the time periods in question.  *See supra* n.7.  The court notes that this inquiry is too limited, and points out that the causal nexus test extends to the *general* "production" of import-impacted "articles" by the parent company.

done at the facility and its relation to the production of an article.")  Instead, Labor argues that

the gaugers did not provide a service that is covered within the provisions of the Act.  *See Def.'s*

*Mem. in Opp'n to Pls.' Mot. for J. Upon the Administrative Record* ("*Def.'s Mem.*") at 15-16.

Following the Secretary's voluntarily remanded investigation, Labor adds that because Marathon

Oil only purchased crude oil at the Illinois Basin and Marathon Oil did not produce oil there,

there was "no evidence linking plaintiffs to production of crude oil by the parent company."

*Def.'s Resp. to Remand* at 12.  Finally, Labor contends that while [

                                                                                                ], Marathon

Ashland did not serve these currently certified producers of import-impacted oil.  *Id.* at 15-16.

Labor relies on the legislative history of the Omnibus Trade and Competitiveness Act of

1988 to support its assertion that gaugers provide services falling outside of the provisions of the

Act.[9]  Labor argues that the 1988 amendments "limited the 'workers eligible for benefits to those

engaged in exploration and drilling for oil, and not more generally to any workers in related

industries who may be adversely affected in some way by oil imports.'" *Def.'s Mem.* at 15 (citing

to *Former Employees of Parallel Petroleum Corp. v. U.S. Secretary of Labor*, 14 CIT 114, 120,

---

[9]  The 1988 Omnibus Trade and Competitiveness Act amendments to the Trade Act of 1974 state in pertinent part:
(b) For purposes of subsection (a)(3) of this section–

(2)(A) Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas shall be considered to be a firm producing oil or natural gas.

(B) Any firm, or appropriate subdivision of a firm, that engages in exploration or drilling for oil or natural gas, or otherwise produces oil or natural gas, shall be considered to be producing articles directly competitive with imports of oil and with imports of natural gas.

731 F. Supp. 524, 528 (1990) (citations omitted)).  While the court concedes that Congress did

not intend for TAA benefits to compensate all displaced employees, this court noted in *Former*

*Employees of Parallel Petroleum Corp.*, that "[l]imiting benefits to a narrow class of workers

engaged only in drilling and exploration would contravene the express language of the

statute. . . ."  *Former Employees of Parallel Petroleum Corp.,* 731 F. Supp. at 527.

> In *Parallel*, this court stated:

> Both § 2272(b)(2)(A) and (B) refer to the "production" of oil and gas as a function that qualifies a firm as "producing an article" within the meaning of § 2272(a)(3).  This being so, Congress could hardly have intended to limit the availability of benefits under the amendment to firms engaged *only* in exploration or drilling, when the statute expressly references "production" as a defining term for invoking the benefits of the trade adjustment assistance legislation.

*Former Employees of Parallel Petroleum Corp.,* 731 F. Supp. at 527.  Given this expansive

treatment and the express language of the statute indicating that firms "otherwise produc[ing] oil

or natural gas" may be eligible for TAA benefits, the court questions Labor's conclusion that the

statute was amended to cover only service workers exclusively engaged in exploration or drilling

for crude.[10]

Moreover, while the court does not question Labor's factual findings indicated above, its

findings are not determinative of the issues at hand.  First, the fact that Marathon Oil only

purchased crude oil from the Illinois Basin does not preclude Labor from making an adequate

investigation into whether at least 25% of the gaugers' activity was expended in service to

---

[10] Labor relies on *Former Employees of Permian Corp. v. United States*, 13 CIT 673, 718 F. Supp. 1549 (1989), for its position.  In *Permian*, this court denied assistance to employees of a firm which transported and marketed crude oil purchased from unaffiliated companies.  *See Former Employees of Permian Corp.*, 718 F. Supp. at 1550.  Here, the parent corporation of Marathon Ashland did, in fact, engage in production and some of its employees were certified for TAA on that basis.

production of an article by Marathon Oil, including production occurring outside of the Illinois Basin area. Second, regardless of the fact that Marathon Ashland did not serve Marathon Oil's currently certified facilities, Marathon Ashland still may have served its parent company's other production facilities whose workers independently meet the statutory criteria. Investigation into this issue is critical to determining whether Plaintiffs may be eligible for TAA certification, even if they are determined to be service workers. Without supporting facts and reasoned analysis in the Secretary's determination concerning the work of the employees here, the court cannot affirm the Secretary's finding that Marathon Ashland was only a "service" company and was not linked to production by its parent company, Marathon Oil.

Therefore, this case must be remanded to Labor for further examination into whether the petitioning employees "produce" an "article" within the meaning of the Act, and whether a causal nexus exists between service provided by Marathon Ashland Pipe Line, LLC and production of an import-impacted article by Marathon Oil.

> B.    *The Secretary Failed to Adequately Investigate Whether Imports Contributed Importantly to Plaintiffs' Separation.*

Labor additionally argues that there was no need to investigate whether imports contributed importantly to the petitioners' separation, because Marathon Oil only purchased and did not produce oil at the sites that Marathon Ashland served and there was an insufficient relationship between the two companies. Labor maintains that the need for further investigation of the company's imports is unnecessary because information in the record reveals that the petitioning employees' separation was in fact due to [

                              ]. *See A.R.* at 16. Labor points out that Leland corroborated this

finding by indicating that [                                                          ] and [

.] *See id.* at 19.

While Plaintiffs acknowledge this [                                                    ], they believe that

["

                                    . "]  *Pls.' First Am. Reply to Def.'s Notice of Negative Determination on Remand* ("*Pls.'*

*Reply to Remand*") at 8;  *A.R.* at 1.  Plaintiffs argue that Labor's further investigation was

inadequate because it considered only whether Marathon Ashland transported product for

Marathon Oil between 1997-1999.  Plaintiffs challenge Labor's methodology, stating that:

> [i]f the Department of Labor had inquired with Marathon Ashland about the overall operations of Marathon Ashland's parent companies within the economic climate of the oil industry and its effect on the demand for Marathon Ashland's services, these facts would demonstrate that Plaintiffs were terminated from their jobs as gaugers because of the economic affects [sic] of imported oil by Marathon Oil.

*Pls.' Reply to Remand* at 8-9.

The court finds Plaintiffs' argument persuasive, and notes that while "this court will defer

to [Labor's] choice of reasonable methodologies, Labor must base its determination upon

sufficient evidence for a reasonable mind to concur in the result."  *Bennett*, 18 CIT at 1068.

Here, on the facts at odds in the record, Labor could not have conclusively determined that

imports did not contribute to the petitioning workers' separation.  Plaintiffs do not dispute

evidence showing that company assets were sold to [                                                    ];

however, Plaintiffs submit that these assets were sold because ["

                                                                                    ."]  *A.R.* at 1.  In

its negative determination, Labor ignored the issue of whether Marathon Oil's decisions to

purchase crude oil imported from Mexico and Canada resulted in the sale of company assets. Such information is crucial in ascertaining the impact of imports on the loss of Plaintiffs' jobs.

An adequate investigation by Labor would have addressed Plaintiffs' claim that imports from Mexico and Canada prompted the sale of Marathon Oil's assets, and as a result, caused the loss of the petitioning employees' jobs. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43 (1983) (stating that an administrative determination is arbitrary and capricious if the agency has "entirely failed to consider an important aspect of the problem"). In order to fulfill its duty to conduct an investigation with the utmost regard for the petitioning workers, Labor should conduct a thorough investigation to fully assess both Leland's information and Plaintiffs' claims. The failure to do so would render the Secretary's investigation cursory at best.

## V. CONCLUSION

Because the court finds that the Secretary inadequately investigated the petitioning employees' jobs as gaugers, it cannot agree with the Defendant that "there [is] no reason to investigate the parent company regarding other issues which might relate to the statute's third criterion." *Def.'s Resp. to Remand* at 12. Therefore, this case must be remanded for further investigation into Marathon Oil's imports and the reasons behind the sale of the company's assets.


Dated: _____                    _____
    New York, NY                                    Judith M. Barzilay
                                                 Judge