**Slip Op. 03-35**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS**

_____
                                          :
FORMER EMPLOYEES OF HENDERSON              :
SEWING MACHINES,                           :
                                          :
            Plaintiffs,                    :
                                          :    Court No. 01-00883
            v.                             :
                                          :
UNITED STATES SECRETARY OF LABOR,          :
                                          :
            Defendant.                     :
_____ :


        Plaintiffs, Former Employees of Henderson Sewing Machines
("plaintiffs")[1], move pursuant to USCIT R. 56.1 for judgment upon
the agency record or, in the alternative, for a re-remand of this
case for further investigation, challenging the United States
Secretary of Labor's ("Labor") determinations entitled: (1) <u>Notice
of Negative Determination on Remand of Henderson Sewing Machine
Company, Inc. Andalusia, Georgia</u> ("<u>Negative Determination II</u>"), 67
Fed. Reg. 18,927 (April 17, 2002); and (2) <u>Notice of Determinations
Regarding Eligibility To Apply for Worker Adjustment Assistance and
NAFTA Transitional Adjustment Assistance</u> ("<u>Negative Determination

---

        [1]  In the brief and response brief of Former Employees of
Henderson Sewing Machines, Sharon L. Cobb appears as the sole
plaintiff in this action. <u>See</u> Pl. Sharon Cobb's Mot. J. Agency R.
("Pls.' Mot.") and Pl.'s Resp. Def.'s Opp'n Pl.'s Mot. J. Agency R.
("Pls.' Resp."). However, in Def.'s Resp. Opp'n Pls.' Mot. J.
Agency R. ("Def.'s Resp. Opp'n), the United States Secretary of
Labor ("Labor") makes reference to plaintiffs rather than Sharon L.
Cobb ("Cobb") as the sole plaintiff. The Court notes that since
Cobb is appearing on behalf of the Former Employees of Henderson
Sewing Machines, the Court will consider Cobb's brief and response
brief as filed on behalf of all plaintiffs (that is, Former
Employees of Henderson Sewing Machines) and not solely on behalf of
Cobb as plaintiff.

I"), 66 Fed. Reg. 47,240 (Sept. 11, 2001).[2] Specifically, plaintiffs contend that Labor erred in denying plaintiffs' certification of eligibility for trade adjustment assistance on the basis that plaintiffs did not produce an article, plaintiffs did not qualify as support service workers and Henderson did not produce an article affected by increased imports that contributed importantly to plaintiffs' separation from Henderson.

**Held**: Plaintiffs' 56.1 motion is denied; case dismissed.

Dated:   March 25, 2003

Robins, Kaplan, Miller & Ciresi L.L.P., (Charles A. Hunnicutt) for Former Employees of Henderson Sewing Machines, plaintiffs.

Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Lucius B. Lau, Assistant Director, and John N. Maher); of counsel: Louisa M. Reynolds, Office of the Solicitor, United States Department of Labor, for the United States, defendant.

**OPINION**

**TSOUCALAS, Senior Judge**:   Plaintiffs, Former Employees of Henderson Sewing Machines ("plaintiffs"), move pursuant to USCIT R. 56.1 for judgment upon the agency record or, in the alternative, for a re-remand of this case for further investigation, challenging the United States Secretary of Labor's ("Labor") determinations entitled: (1) Notice of Negative Determination on Remand of Henderson Sewing Machine Company, Inc. Andalusia, Georgia

---

[2]   Labor notes that "[i]n the Federal Register, Labor misidentified the location of the facility at which the instant plaintiffs worked.  Although the facility is actually in Alabama, Labor misstated, due to clerical error, that the facility is in Georgia."  Def.'s Resp. Opp'n at 2 n.1.

("Negative Determination II"), 67 Fed. Reg. 18,927 (April 17, 2002); and (2) Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance ("Negative Determination I"), 66 Fed. Reg. 47,240 (Sept. 11, 2001). Specifically, plaintiffs contend that Labor erred in denying plaintiffs' certification of eligibility for trade adjustment assistance on the basis that plaintiffs did not produce an article, plaintiffs did not qualify as support service workers and Henderson did not produce an article affected by increased imports that contributed importantly to plaintiffs' separation from Henderson.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 2395(c) (2000) and 28 U.S.C. § 1581(d)(1) (2000).

## STANDARD OF REVIEW

In reviewing a challenge to Labor's determination of eligibility for trade adjustment assistance, the Court will uphold Labor's determination if it is supported by substantial evidence on the record and is otherwise in accordance with law. See 19 U.S.C. § 2395(b) (2000); Former Employees of Marathon Ashland Pipeline v. Chao, 26 CIT __, __, 215 F. Supp. 2d 1345, 1350 (2002) (citing Woodrum v. Donovan, 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983),

aff'd, Woodrum v. United States, 737 F.2d 1575 (Fed. Cir. 1984));

Former Employees of Barry Callebaut v. Herman, 25 CIT __, __, 177

F. Supp. 2d 1304, 1308-09 (2001). Pursuant to 19 U.S.C. § 2395(b),

Labor's findings of fact are conclusive if they are supported by

substantial evidence. See 19 U.S.C. § 2395(b). "Substantial

evidence is something more than a 'mere scintilla,' and must be

enough reasonably to support a conclusion." Ceramica Regiomontana,

S.A. v. United States, 10 CIT 399, 405, 636 F. Supp. 961, 966

(1986), aff'd, 810 F.2d 1137 (Fed. Cir. 1987); see also

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

"Additionally, 'the rulings made on the basis of those findings

[must] be in accordance with the statute and not be arbitrary and

capricious, and for this purpose the law requires a showing of

reasoned analysis.'" Former Employees of Marathon Ashland, 26 CIT

at __, 215 F. Supp. 2d at 1350 (quoting Former Employees of General

Electric Corp. v. U.S. Dep't of Labor, 14 CIT 608, 610-11

(1990)(citation omitted)).

Moreover, although "'the nature and extent of the

investigation are matters resting properly within the sound

discretion of [Labor,]'" Former Employees of Galey & Lord Indus. v.

Chao, 26 CIT __, __, 219 F. Supp. 2d 1283, 1286 (2002) (quoting

Former Employees of CSX Oil & Gas Corp. v. United States, 13 CIT

645, 651, 720 F. Supp. 1002, 1008 (1989) (citation omitted)),

"'[g]ood cause [to remand] exists if [Labor's] chosen methodology is so marred that [Labor's] finding is arbitrary or of such a nature that it could not be based on substantial evidence.'" Former Employees of Galey & Lord Indus., 26 CIT at __, 219 F. Supp. 2d at 1286 (quoting Former Employees of Barry Callebaut, 25 CIT at __, 177 F. Supp. 2d at 1308 (citations omitted)). "However, in evaluating the evidence underlying [Labor's] conclusions, the court may consider only the administrative record before it." Former Employees Marathon Ashland, 26 CIT at __, 215 F. Supp. 2d at 1350.

**DISCUSSION**

**I. Labor's Decision to Deny Plaintiffs Trade Adjustment Assistance**

**A. Background**

On June 29, 2001, Henderson's vice president signed a petition for trade adjustment assistance ("TAA") under Section 221(a) of the Trade Act of 1974, as amended (that is, 19 U.S.C. § 2271(a) (2000)), which was filed with Labor on behalf of plaintiffs who were separated from employment with Henderson on June 22, 2001.[3] See Admin. R. at 1.

---

[3] The plaintiffs in this action who were separated from employment with Henderson located in Andalusia, Alabama, were Cobb and Elaine Scott. See Admin. R. at 1.

In response to the petition, Labor initiated an investigation to determine whether plaintiffs were entitled to TAA. During the investigation, Labor: (1) reviewed the June 29, 2001, petition and accompanying attachments, see Def.'s Resp. Opp'n Pls.' Mot. J. Agency R. ("Def.'s Resp. Opp'n) at 2; (2) sent a "Business Confidential Data Request" form to Henderson, see Admin. R. at 11-13 (confidential version); and (3) "surveyed [Henderson's] major declining customers." Def.'s Resp. Opp'n at 3; see also Admin. R. at 14-17 (confidential version). The June 29, 2001, petition signed by Henderson's vice president described plaintiffs' jobs at Henderson as "accounting"[4] and indicated a response of "textile industry" to a question asking for "a description of the articles (products) produced by the firm . . . [to] include such information as the common and technical names of the articles, [as well as] the method of manufacture." Admin. R. at 1. On July 16, 2001, Henderson's vice president completed the "Business Confidential Data Request" form providing sales and employment data, but no production data. See Admin. R. at 11 (confidential version). Additionally, Henderson's vice president indicated that Henderson manufactures sewing machine parts. See id.; see also Admin. R. at 3.

---

[4] "In a June 25, 2001 letter attached to the [June 29, 2001] petition," Def.'s Resp. Opp'n at 3, Henderson's vice president stated that "Cobb has worked for [Henderson] for more than 10 years, as accounts payable clerk." Admin. R. at 2.

Subsequent to the investigation, Labor in its "Findings of the Investigation" revealed in pertinent part that

> [w]orkers [that is, the plaintiffs in this action] at the Henderson Sewing Machine Company, Inc. in Andulusia, Alabama were engaged in accounting services for the company. The subject firm is involved in sales and distribution of industrial sewing machine parts.
>
> . . .
>
> A survey was conducted for the major declining customers of the subject firm [that is, Henderson].
>
> None of the customers increased import purchases of parts for sewing machines, while decreasing purchases of the subject firm [that is, Henderson].

Admin. R. at 18-19. Moreover, on August 29, 2001, Labor determined that the plaintiffs formerly employed at Henderson were not eligible to receive worker adjustment assistance under section 223 of the Trade Act of 1974 (that is, 19 U.S.C. § 2273 (2000)). See Admin. R. at 20-21. Labor reasoned that:

> The investigation revealed that the workers of [Henderson] did not produce an article within the meaning of Section 223(3) [sic][5] of the Trade Act of 1974 [that is, 19 U.S.C. § 2272(a)(3) (2000)]. [Labor] has consistently determined that the performance of services does not constitute production of an article, as required by the Trade Act of 1974, and this determination has been upheld in the [United States] Court of Appeals.
>
> Workers of [Henderson] may be certified only if their separation was caused importantly by a reduced demand for their services from a parent firm, a firm otherwise related to the subject firm by ownership, or a firm related by control. Additionally, the reduction in

---

[5] The Court assumes that Labor intended to cite to Section 222(3) of the Trade Act of 1974.

demand for services must originate at a production facility whose workers independently meet the statutory criteria for certification and the reduction must directly relate to the product impacted by imports. These conditions have not been met for workers performing services at [Henderson].

Admin. R. at 20-21. Labor sent notices of its decision to plaintiffs on September 10, 2001, see Admin. R. at 23-24, and published its notice of the negative determination on September 11, 2001. See Negative Determination I, 66 Fed. Reg. at 47,241.

On October 15, 2001, one of the plaintiffs in this action (that is, Cobb), filed a letter along with enclosures, deemed a summons and complaint, stating in pertinent part that "[Cobb] started part time in 1980 working as [an] account receivable clerk [at Henderson], and within two-three years was asked to go full time . . . [and] was then changed to [an] account payable clerk[.]" Cobb further stated that Henderson "does not produce products, [but] . . . res[ells] commercial sewing machines and parts to sewing factories." Subsequently, in Cobb's "Amended Affidavit in Support of Motion to Proceed in Forma Pauperis," Cobb stated that "Henderson R&D Dept. does produce parts for use on commercial sewing machines."

On December 7, 2001, this Court granted Labor's consent motion for voluntary remand and ordered Labor to conduct a further investigation and to make a redetermination as to whether

petitioners are eligible for certification for worker adjustment assistance benefits. During the remand investigation, Labor: (1) contacted various customers of Henderson, see Admin. R. at 33, 34, 36, 37, 38 (confidential version); (2) sent a "Business Confidential Data Request" form to Henderson, see id. at 29-32; and (3) "contacted Mr. Henderson, the company vice-president, who responded in writing." Def.'s Resp. Opp'n at 6; see also Admin R. at 39 (confidential version). In response to the remand investigation, the following occurred: (1) the various customers of Henderson responded that Henderson was "involved in sales and distribution of sewing machines and parts[,]" Def.'s Resp. Opp'n at 5, see Admin. R. at 33, 34, 36 (confidential version); (2) Henderson's vice president completed the "Business Confidential Data Request" form providing sales and employment data, but no production data, and further indicated that Henderson manufactures sewing machine parts and machines, see Admin. R. at 29 (confidential version); and (3) Henderson's vice president responded to Labor in a letter describing Henderson's business and explaining that the two plaintiffs in the case at bar were terminated from their employment at Henderson while another five employees left for reasons other than being terminated. See id. at 39.

Subsequently, on February 6, 2002, Labor issued its "Notice of Negative Redetermination on Remand" affirming Labor's initial notice of negative determination, see Negative Determination I, 66 Fed. Reg. at 47,241, and stating:

> The results of the investigation on remand revealed that during the relevant period, [Henderson] laid off a total of two administrative workers. Another five workers left on their own accord, due to various personal reasons. None of these workers were engaged in the manufacture of any product while employed at the subject facility.
>
> Further, the overwhelming portion of the activities performed at the subject facility relates to the sales of industrial sewing machines and related parts. The company also produces components that attach to the sewing machine (value added) before they are sold. The company indicated that this is a negligible portion of the total functions performed at the subject facility.

Admin. R. at 41. Labor published its notice of negative determination on remand on April 17, 2002. See Negative Determination II, 67 Fed. Reg. at 18,927-28.

On March 7, 2002, plaintiffs filed a notice expressing dissatisfaction with the negative remand results. Moreover, on May 30, 2002, this Court granted "Plaintiffs' Unopposed Motion to Amend the Administrative Record" and ordered that Labor file an amended record and index to include any and all records pertaining to Investigation Nos. TA-W-34,672 (Andalusia), TA-W-34,672A (Multrie), and TA-W-34,314B (Maryville) involving workers at Henderson (that is, records pertaining to Henderson's previous petition to Labor of

May 26, 1998, for trade adjustment assistance).  Labor  submitted the Amended Administrative Record ("Am. Admin. R.") to this Court on June 13, 2002.

Plaintiffs' motion for judgment upon the agency record currently before the Court followed.

### B.    Contentions of the Parties

#### 1.    Plaintiffs' Contentions

Plaintiffs contend that Labor's initial negative determination (Negative Determination I, 66 Fed. Reg. 47,240) and Labor's subsequent negative determination on remand (Negative Determination II, 67 Fed. Reg. 18,927) denying plaintiffs' certification of eligibility for trade adjustment assistance are not supported by substantial evidence and are not in accordance with law.  See Pl. Sharon Cobb's Mot. J. Agency R. ("Pls.' Mot.") at 5-22; see also Pl.'s Resp. Def.'s Opp'n Pl.'s Mot. J. Agency R. ("Pls.' Resp.") at 1-15.  In particular, plaintiffs argue that plaintiffs meet the eligibility requirements of 19 U.S.C. § 2272 for trade adjustment assistance because: (1) Henderson produces an article, see Pls.' Mot. at 7-11; (2) plaintiffs' positions at Henderson were directly related to the production of an article, see id. at 11-14; (3) a significant number of Henderson employees became separated, see id.

at 14-16;[6] and (4) "Henderson's . . . sales declined and imports directly competitive with Henderson's . . . articles contributed importantly to such decline." Id. at 16.

First, with respect to plaintiffs' argument that Henderson produces an article within the meaning of 19 U.S.C. § 2272, plaintiffs argue that "the record does not support Labor's conclusion that Henderson does not produce an article." Pls.' Resp. at 2. Plaintiffs point out that: (1) Henderson's vice president indicated on a questionnaire that Henderson manufactures sewing machine parts, see Pls.' Mot. at 7 (citing Admin. R. at 3 and Admin. R. at 39 (confidential version)); (2) "Labor's own petition screening and verification form indicates that Henderson['s] . . . products are sewing machine parts[,]" Pls.' Mot. at 7 (citing Admin. R. at 6); (3) Labor's August 29, 2001, negative determination states that "'[t]he affected workers . . . provided . . . accounting services at a company where industrial sewing machines are produced[,]'" Pls.' Mot. at 7 (quoting Admin. R. at 20) (emphasis omitted); (4) "[t]he absence of a response on one part of Labor's form [that is, the "Business Confidential Data Request" form completed by Henderson's vice president] is not evidence that Henderson does not produce an article[,]" Pls.'

---

[6] The Court will not address plaintiffs' contention that a significant number of Henderson's employees became separated because it is not at issue. See Pls.' Mot. at 14 n.2.

Resp. at 2; (5) "Henderson . . . is the same company performing the same functions today as it did in 1998 when other former employees, including service workers, were certified for trade adjustment assistance under the Trade Act[,]" Pls.' Mot. at 9 (citing Am. Admin. R. at 1, 13-15 and Am. Admin. R. at 11 (confidential version)), see also Pls.' Mot. at 10; and (6) "Labor's reliance on Ms. Cobb's inaccurate statement [that is, Cobb's statement that Henderson does not produce products] in the complaint is misplaced" because in Cobb's "Amended Affidavit in Support of Motion to Proceed in Forma Pauperis", "Ms. Cobb stated that 'Henderson R&D Dept. produces parts for commercial sew[ing] machines.'" Pls.' Resp. at 8. Plaintiffs further argue that Labor's reliance on information provided by various customers of Henderson on whether Henderson produced an article is misplaced.[7]

---

[7] In plaintiffs' response brief, plaintiffs argue that Labor mistakenly relied on information provided by various customers of Henderson "for support of . . . [Labor's] finding that Henderson does not produce an article." Pls.' Resp. at 3. In particular, plaintiffs contend that: (1) "Henderson itself, the best source for such information, has indicated that it does in fact produce articles[,]" id. at 3-4; (2) "[a] customer's incorrect understanding or belief is not a valid basis upon which Labor should be permitted to reach such an important conclusion[,]" id. at 4; (3) "there is evidence in the record that Labor may have incorrectly informed certain customers that Henderson did not produce an article . . . [because] Labor's statements may have tainted the customers' responses or caused them to return survey forms without completing them[,]" id. at 4-5 (citing Admin. R. at 34) (confidential version); and (4) the various customers "have no first-hand knowledge concerning Henderson's internal operations." Pl.'s Resp. at 5.

(continued...)

See Pls.' Mot. at 8-9 (citing Admin. R. at 33-36 (confidential version)); see also Pls.' Resp. at 3-6. Moreover, plaintiffs maintain that "the record does not support a finding that [Henderson] indicated its production of components is negligible." Pls.' Mot. at 7. In particular, plaintiffs argue that "there is no substantial evidence upon which Labor could base its conclusion that the 'company indicated' that its manufacturing activities were negligible."[8] Id. at 8 (quoting Admin. R. at 41).

---

[7](...continued)
The Court finds that Labor's reliance on the information provided by various customers is not misplaced and that Labor acted properly within the scope of its discretion. See Former Employees of CSX Oil and Gas Corp., 13 CIT at 651, 720 F. Supp. at 1008 (quoting Cherlin v. Donovan, 7 CIT 158, 162, 585 F. Supp. 644, 647 (1984)) ("It is well established that while Labor has a duty to investigate, 'the nature and extent of the investigation are matters resting properly within the sound discretion of the administrative officials'"); Former Employees of Galey & Lord Indus., 26 CIT at __, 219 F. Supp. 2d at 1286 (quoting Former Employees of Barry Callebaut, 25 CIT at __, 177 F. Supp. 2d at 1308 (citations omitted)) ("'Good cause [to remand] exists if [Labor's] chosen methodology is so marred that [Labor's] finding is arbitrary or of such a nature that it could not be based on substantial evidence'").

[8] Plaintiffs point to a handwritten notation in the margin of a letter provided by Henderson's vice president and argue that "[t]here is no evidence on the record that Henderson actually provided such information to Labor." Pls.' Resp. at 6 (citing Admin. R. at 39 (confidential version)). Labor responds that "[Labor] share[s] plaintiffs' view that this handwritten note was made by a Labor employee . . . who likely contacted Mr. Henderson [that is, Henderson's vice president] for clarification and made the notation to memorialize Mr. Henderson's comment." Def.'s Resp. Opp'n at 24. Relying on United States Steel Workers of Am., Local 1082 v. McLaughlin, 15 CIT 121, 123 (1991) for the proposition that "reliance upon unverified statements of company officials

(continued...)

Second, with respect to plaintiffs' argument that "[t]he separated workers' positions were directly related to the production of an article[,]" Pls.' Mot. at 11, plaintiffs contend that: (1) "Cobb's position had the same relation to production as the service workers that were certified in [Labor's] 1998 investigation[,]"[9] id. at 12; and (2) "Cobb was a service worker to Henderson['s] . . . production division."[10]  Id. at 13.

---

[8](...continued)
constitutes substantial evidence in the absence of contradictory information[,]" Labor further asserts that "[i]n light of . . . consistent information from various relevant sources, plaintiffs have not demonstrated that Labor's understanding of Henderson's production situation resulted from anything but reasoned analysis of findings supported by substantial evidence." Def.'s Resp. Opp'n at 24-25.

[9]  Plaintiffs assert that "the record is clear that one employee from the Andalusia, Alabama, facility at issue in the 1998 investigation, and ultimately deemed part of the certified group of separated workers, was a customer service representative." Pls.' Mot. at 12 (citing Am. Admin. R. at 1). "Moreover, [in the 1998 investigation], separated workers from the sales divisions located in Moultrie, Georgia, and Maryville, Tennessee, . . . were part of the group of certified workers." Pls.' Mot. at 12 (citing Am. Admin. R. at 10-12 (confidential version) and Am. Admin. R. at 13-15); see also Pls.' Mot. at 12 (citing Abbott v. Donovan, 6 CIT 92, 100-01, 570 F. Supp. 41, 49 (1983)).

[10]  In their brief, plaintiffs provide a narration of Cobb's job activities. See Pls.' Mot. at 13. The Court agrees with Labor that "plaintiffs' moving brief contains information that is not part of the administrative record . . . [and] [t]he Court should not consider it." Def.'s Resp. Opp'n at 21; see Former Employees of Marathon Ashland, 26 CIT at __, 215 F. Supp. 2d at 1350 (quoting Former Employees of General Electric Corp., 14 CIT at 610-11 (citations omitted)) ("in evaluating the evidence underlying [Labor's] conclusions, the [C]ourt may consider only the administrative record before it").

Finally, with respect to plaintiffs' argument that "Henderson's . . . sales declined and imports directly competitive with Henderson's . . . articles contributed importantly to such decline[,]" Pls.' Mot. at 16, plaintiffs assert that Labor "misconstrues the record when claiming that responses to [Labor's] survey[s] 'uniformly revealed that none of Henderson's customers increased imports while decreasing purchases from Henderson,' and that Henderson's sales were not affected by imports." Pls.' Resp. at 9 (confidential version) (quoting Def.'s Resp. Opp'n at 3 and citing Def.'s Resp. Opp'n at 8, 9, 17). In particular, plaintiffs point out that: (1) the same conditions that existed in the 1998 investigation of Henderson exist in the investigation at bar (that is, just as in the 1998 investigation of Henderson, the current investigation reveals that pursuant to 19 U.S.C. § 2272(a)(3), "[t]he increase in imports . . . contribute[d] importantly to the decline in sales or production and the separation of employees[,]" Pls.' Mot. at 16 (citing Am. Admin. R. at 7-8 (confidential version) and Admin. R. at 11 (confidential version)); (2) "[c]ommensurate with the decline in sales was the increase in imports of sewing machines, parts and accessories competing with Henderson[,]" Pls.' Mot. at 16 (citing Admin. R. at 12 (confidential version)); (3) "Henderson . . . explained in its Petitioner Questionnaire in the instant matter that it had already been importing sewing machines and parts" from various countries,

Pls.' Mot. at 16 (citing Admin. R. at 3); (4) one of Henderson's customers "indicated that its purchases from Henderson . . . declined from 1999 through 2001, while sewing machines and parts purchased from other sources increasingly were manufactured in a foreign country[,]" Pls.' Mot. at 17 (citing Admin. R. at 14 (confidential version)); (5) "[a]nother customer . . . indicated that its purchases of sewing machines and parts from domestic sources declined[,]" Pls.' Mot. at 17 (citing Admin. R. at 38 (confidential version)); (6) another customer of Henderson "confirmed that purchases of domestic sewing machines and parts steadily declined[,]" Pls.' Mot. at 17 (citing Admin. R. at 16 (confidential version)); and (7) "[o]ther customers, whose purchases declined, either closed and filed bankruptcy, moved to foreign countries, or failed to respond to questionnaires due to the mistaken belief that Henderson . . . did not manufacture parts." Pls.' Mot. at 17 (citing Admin. R. at 12, 17, 34, 37 (confidential version)).

In the alternative, plaintiffs argue that if the Court does not certify the plaintiffs for trade adjustment assistance, then the Court should remand this case and "order [Labor] to undertake a more thorough investigation" pursuant to 19 U.S.C. § 2395(b). Pls.' Mot. at 20. Plaintiffs maintain that: (1) the administrative record at issue "lacks any meaningful discussion regarding the

investigative measures undertaken by [Labor,]" id. at 21; and (2) "[t]he information and documentation submitted by [Henderson's vice president] on behalf of Henderson . . . is incomplete and many questions were answered inconclusively." Id. (citing Admin. R. at 1, 3-5).

As a further alternative, plaintiffs assert that "[i]f this Court disagrees that the existing record can establish that imports increased and contributed to the decline in Henderson's . . . sales, it should find . . . that the record is not sufficient to support [Labor's] denial of eligibility[]" because "many customers failed to respond to Labor's questionnaires and other customers, under the mistaken belief that Henderson . . . did not produce a product, were instructed by Labor not to complete the forms." Pls.' Mot. at 22.

### 2.   Labor's Contentions

Labor responds that its initial negative determination (Negative Determination I, 66 Fed. Reg. 47,240) and Labor's subsequent negative determination on remand (Negative Determination II, 67 Fed. Reg. 18,927) denying plaintiffs' certification of eligibility for trade adjustment assistance are supported by substantial evidence and are in accordance with law.  See Def.'s Resp. Opp'n at 8-27.  In particular, Labor argues that  "Labor

reasonably denied certification because none of the former employees produced an article, qualified as a service support employee, and the subject firm did not produce an article, let alone one that was affected by increased imports." Id. at 9.

First, with respect to Labor's argument that plaintiffs did not produce an article, Labor points out that: (1) the June 29, 2001, petition signed by Henderson's vice president described plaintiffs' jobs at Henderson as "accounting," see Def.'s Resp. Opp'n at 14 (confidential version) (citing Admin. R. at 2); (2) "[i]n a June 25, 2001 letter to Labor attached to the petition for assistance," Henderson's vice president stated that "'Cobb has worked for [Henderson] for more than 10 years as accounts payable clerk[,]'" Def.'s Resp. Opp'n at 14 (confidential version) (quoting Admin. R. at 2); and (3) plaintiffs in their brief do not dispute that plaintiffs provided accounting services. See Def.'s Resp. Opp'n at 14 (citing Pls.' Mot. at 3). Labor maintains that "[i]t is well-established that the performance of services does not constitute production of an article, as required by [19 U.S.C. § 2272(a)(3)]." Def.'s Resp. Opp'n at 14; see also Def.'s Rep. Opp'n at 14-16 (citing Former Employees of Permian Corp. v. United States, 13 CIT 673, 675, 718 F. Supp. 1549, 1551 (1989); Woodrum, 5 CIT 191, 564 F. Supp. 826; Nagy v. Donovan, 6 CIT 141, 571 F. Supp. 1261 (1983); Pemberton v. Marshall, 639 F.2d 798 (D.C. Cir.

1981); and <u>Fortin v. Marshall</u>, 608 F.2d 525, 526 (1ˢᵗ Cir. 1979)). Labor, therefore, asserts that "Labor's initial negative determination [<u>Negative Determination I</u>, 66 Fed. Reg. 47,240] that workers who provided accounting services 'did not produce an article within the meaning of [19 U.S.C. § 2272(a)(3)]' is supported by undisputed evidence and Labor's negative eligibility ruling is the result of a reasoned application of the statute and relevant case law to the undisputed facts." Def.'s Resp. Opp'n at 16 (quoting <u>Negative Determination I</u>, 66 Fed. Reg. at 47,241).

Second, Labor argues that plaintiffs do not qualify as support service employees. <u>See</u> Def.'s Resp. Opp'n at 16-18. Relying on <u>Bennett v. Secretary of Labor</u>, 20 CIT 788 (1996), Labor maintains that: (1) "[b]ecause no production employee independently qualified for certification, certification of support service workers is precluded[,]"[11] Def.'s Resp. Opp'n at 17; (2) "the record indicates that the plaintiffs' did not lose their jobs because imports affected an article Henderson produced[,]" <u>id.</u>; (3) Henderson's vice president did not provide production data and

---

[11] Contrary to Labor's argument that certification of support service workers is precluded because "no production employee independently qualified for certification," Def.'s Resp. Opp'n at 17, plaintiffs maintain that "neither [19 U.S.C. § 2272(a)] nor the case law [<u>Bennett</u>, 20 CIT 788; <u>Katunich v. Donovan</u>, 8 CIT 156, 166-67, 594 F. Supp. 744, 753 (1984); and <u>Abbott</u>, 6 CIT 92, 570 F. Supp. 41] support [Labor's] legal argument." Pls.' Resp. at 10; <u>see also</u> Pls.' Resp. at 10-15.

"none of Henderson's customers increased imports while decreasing purchases from Henderson[,]" Def.'s Resp. Opp'n at 17 (confidential version) (citing Admin. R. at 14-17 (confidential version)); and (4) Labor's remand investigation revealed that

> during the relevant period, [Henderson] laid off a total of two administrative workers. Another five workers left on their own accord, due to various personal reasons. None of these workers were . . . engaged in the manufacture of any produc[t] while employed at [Henderson].

Def.'s Resp. Opp'n at 17-18 (confidential version) (citing Admin. R. at 41); see also Def.'s Resp. Opp'n at 18 (citing Admin. R. at 39 (confidential version) and Admin. R. at 1)).

Finally, Labor asserts that an additional basis that precludes the certification of the plaintiffs is Labor's finding that

> 'the overwhelming portion of the activities performed at [Henderson] relates to the sales of industrial sewing machines and related parts. The company also produces components that attach to the sewing machine (value added) before they are sold. The company indicated that this is a negligible portion of the total functions performed at the facility.'[12]

Def.'s Resp. Opp'n at 18 (confidential version) (quoting Admin. R. at 41). Labor maintains that: (1) Henderson's vice president submitted a petition that was resubmitted unchanged during remand indicating a response of "'textile industry'" to a question asking

---

[12] Plaintiffs argue that "the issue is not whether production is negligible, but whether production has become affected by imports." Pls.' Mot. at 10; see also Pls.' Mot at 10-11 and Pls.' Resp. at 7-8.

for "'a description of the articles (products) produced by [Henderson],'" and to "'include such information as the common and technical names of the articles [as well as] the method of manufacture[,]'" Def.'s Resp. at 19 (quoting Admin. R. at 1); (2) Henderson's vice president responded to Labor's "Business Confidential Data Request" form by providing sales and employment data, but no production data, see Def.'s Resp. at 19 (citing Admin. R. at 11 (confidential version), see also Admin. R. at 29 (confidential version); (3) during the remand investigation, various customers of Henderson responded that Henderson was involved in sales and distribution of sewing machines and parts, see Def.'s Resp. Opp'n at 19, see Admin. R. at 33, 34, 36 (confidential version); (4) "Henderson itself corroborated the evidence demonstrating [that it was involved in sales and distribution of sewing machines and parts] rather than production[,]" Def.'s Resp. Opp'n at 20 (citing Admin. R. at 39 (confidential version)); (5) Cobb's October 15, 2001, letter filed with enclosures, deemed a summons and complaint, states that "'Henderson . . . does not produce products, [but] . . . res[ells] commercial sewing machines and parts to sewing factories[,]'" id. at 20-21; and (6) the attachment to Cobb's October 15, 2001, letter states that "'Henderson . . . res[ells] . . . commercial sewing machines and parts.'" Id.

Alternatively, Labor argues that "plaintiffs have not demonstrated that Labor's determinations [Negative Determination I, 66 Fed. Reg. 47,240 and Labor's subsequent negative determination on remand, Negative Determination II, 67 Fed. Reg. at 18,927] are unsupported by substantial evidence contained in the administrative record, thus remand for further investigation is inappropriate, and Labor's decisions should not be disturbed." Def.'s Resp. Opp'n at 21; see also Def.'s Resp. Opp'n at 21-27 (confidential version). In particular, Labor points out that plaintiffs fail to cite to the record for support of their argument that "'Henderson . . . is the same company performing the same functions today as it did in 1998 when other former employees, including service workers, were certified for trade adjustment assistance.'" Def.'s Resp. Opp'n at 22 (quoting Pls.' Mot. at 9). Moreover, Labor argues that plaintiffs' assertion that Henderson is the same company as it was during the 1998 investigation is fundamentally flawed because: (1) in 1998, Henderson's vice president provided Labor with certain production numbers whereas in the investigation at issue, Henderson's vice president did not provide production numbers[,] see Def.'s Resp. Opp'n at 23 (comparing Am. Admin. R. at 7 with Admin. R. at 11 (confidential versions)); and (2) "[i]n 1998, Labor determined that Henderson in fact had employees engaged in production that independently met the statutory criteria for certification," Def.'s Resp. Opp'n at 23 (citing Am. Admin. R. at

11 (confidential version)) whereas in the investigation at bar, "Labor properly determined that none of the employees that left Henderson during the period investigated was involved in production." Def.'s Resp. Opp'n at 23 (citing Admin. R. at 39 (confidential version)). Additionally, contrary to plaintiffs' argument that "'a decline in sales and production contributed importantly to [plaintiffs'] separation[,]'" Def.'s Resp. Opp'n at 26 (confidential version) (quoting Pls.' Mot. at 11), Labor maintains that "[t]his representation is arguably accurate to the extent that sales may have led to plaintiffs' separation" but it is incorrect as to production leading to plaintiffs' separation. Def.'s Resp. Opp'n at 26 (citing Admin. R. at 39 (confidential version)). Labor, therefore, contends that the Court should deny plaintiffs' motion and sustain Labor's negative determinations.

### C. Analysis

The Trade Adjustment Assistance program under Section 221(a) of the Trade Act of 1974, as amended, (that is, 19 U.S.C. § 2271(a)) was designed to provide temporary financial assistance for workers who have been partially or totally displaced as a result of increased imports. See Former Employees of Rohm and Haas Co. v. Chao, 2003 Ct. Intl. Trade LEXIS 7, *2, Slip. Op. 03-7 (Jan. 23, 2003) (citing Former Employees of Hawkins Oil & Gas, Inc. v. U.S. Sec'y of Labor, 15 CIT 653, 654 (1991)). Pursuant to 19 U.S.C. §

2272(a):[13]

>    [Labor] shall certify a group of workers . . . as
>    eligible to apply for adjustment assistance under this
>    subpart if [Labor] determines--
>
>        (1) that a significant number or proportion of
>        the workers in such workers' firm or an appropriate
>        subdivision of the firm have become totally or
>        partially separated, or are threatened to become
>        totally or partially separated,
>
>        (2) that sales or production, or both, of such
>        firm or subdivision have decreased absolutely, and
>
>        (3) that increases of imports of articles like
>        or directly competitive with articles produced by
>        such workers' firm or an appropriate subdivision
>        thereof contributed importantly to such total or
>        partial separation, or threat thereof, and to such
>        decline in sales or production.

"Thus, it follows that [19 U.S.C. § 2272(a)(3)'s] certification requirements are satisfied if it is established that a group of workers produce[] an "article" within the meaning of the statute, and an imported article like or directly competitive with the article produced by the workers' firm or subdivision contributes importantly to the loss of such workers' jobs." Former Employees of Marathon Ashland, 26 CIT at __, 215 F. Supp. 2d at 1351. Section 2272(b)(1) of Title 19 defines "contributed importantly" to mean "a

---

[13] Congress recently amended the Trade Act of 1974. See Trade Adjustment Assistance Reform Act of 2002, Pub. L. No. 107-210, 116 Stat. 933 (Aug. 6, 2002). However, in the case at bar, plaintiffs' petition for trade adjustment assistance predates "November 4, 2002, the effective date of [the Trade Adjustment Assistance Reform Act of 2002]." Former Employees of Rohm and Haas Co., 2003 Ct. Intl. Trade LEXIS at *2-3 n.1 (citing Pub. L. No. 107-210 § 151, 116 Stat. at 953-54).

cause which is important but not necessarily more important than any other cause."[14]   19 U.S.C. § 2272(b)(1); see also Former Employees of Rohm and Haas Co., 2003 Ct. Intl. Trade LEXIS 7, at *3 (quoting Former Employees of Hewlett-Packard Co. v. United States, 17 CIT 980, 985 (1993) ("[t]here must be an 'important causal nexus' between increased imports and the decline in sales or production").

The Court finds that Labor's Negative Determination I, 66 Fed. Reg. 47,240, and Labor's subsequent Negative Determination II, 67 Fed. Reg. 18,927, denying plaintiffs' certification of eligibility for trade adjustment assistance on the basis that the plaintiffs did not produce an article, plaintiffs did not qualify as support service workers and Henderson did not produce an article affected by increased imports that contributed importantly to plaintiffs' separation from Henderson are supported by substantial evidence and are in accordance with law.

---

[14] "According to the Senate Report to the Trade Reform Act of 1974, while a 'cause may have contributed importantly even though it contributed less than another single cause[, it still] must be significantly more than de minimis to have contributed importantly[.]'" Former Employees of Kleinerts, Inc. v. Herman, 23 CIT 647, 651, 74 F. Supp. 2d 1280, 1285 (1999) (quoting S. Rep. No. 93-1298, 93rd Cong., 2nd Sess. at 133 (1974)).

### 1.    Plaintiffs Did Not Produce an Article

First, with respect to Labor's determination that plaintiffs did not produce an article within the meaning of 19 U.S.C. § 2272(a)(3), the record evidence indicates that Henderson's vice president signed a petition for TAA on behalf of plaintiffs on June 29, 2001, describing plaintiffs' jobs at Henderson as "accounting." See Admin. R. at 1.  A June 25, 2001, letter from Henderson's vice president to Labor that was attached to the petition stated that "Cobb . . . worked for [Henderson] for more than 10 years, as accounts payable clerk."  Id. at 2.  Moreover, a letter submitted by Henderson's vice president to Labor during the remand investigation stated that plaintiffs' did not produce a product. See Admin. R. at 39 (confidential version).  Additionally, Cobb's letter with enclosures deemed a summons and complaint by this Court states in pertinent part that "[Cobb] started part time in 1980 working as [an] account receivable clerk [at Henderson], and within two-three years was asked to go full time . . . [and] was then changed to [an] account payable clerk[.]"  Since plaintiffs fail to point to any record evidence that contradicts Labor's finding that plaintiffs did not produce an article, the Court finds that Labor's determination that plaintiffs did not produce an article within the meaning of 19 U.S.C. § 2272(a)(3) is supported by substantial

evidence.[15]  See <u>Former Employees of Pittsburgh Logistics Systems,</u> <u>Inc. v. U.S. Sec'y of Labor</u>, 2003 Ct. Intl. Trade LEXIS 18, *18, Slip. Op. 03-21 (Feb. 28, 2003) (citing <u>Woodrum</u>, 5 CIT at 198, 564 F. Supp. at 831; <u>Nagy</u>, 6 CIT at 145, 571 F. Supp. at 1264; and <u>Pemberton</u>, 639 F.2d 798)) ("TAA was intended to benefit those who ha[ve] been engaged in the production of an import-impacted article, and courts have noted the common meaning of 'production,' *i.e.*, to 'give birth, create or bring into existence'").

---

[15]  The Court is not persuaded by plaintiffs' argument that "Henderson . . . is the same company engaged in the same activities as it was in 1998 [and, therefore,] Cobb's position in the accounting department ha[s] the same nexus to production activities as the sales employees' positions [and customer service representative's position] in the 1998 investigation." Pls.' Mot. at 12.  First, plaintiffs fail to point to record evidence in support of this argument.  Second, in the 1998 investigation, Henderson's vice president responded to Labor's "Business Confidential Data Request" form by stating that Henderson produced a certain article (product) and provided Labor with production numbers for that article whereas in the investigation at issue, Henderson's vice president responded to Labor's "Business Confidential Data Request" form on <u>two occasions</u> (during the initial investigation and during the voluntary remand investigation) stating in both instances that Henderson produced a certain article and <u>failing to provide any production numbers for</u> <u>that alleged article</u>.  <u>Compare</u> Am. Admin. R. at 1, 6-8 (1998 investigation) (confidential version) <u>with</u> Admin. R. at 1, 11-13, 29-32 (investigation at bar) (confidential version) (emphasis supplied).  Finally, in the 1998 investigation, Labor determined that "Henderson <u>in fact had employees engaged in production that</u> <u>independently met the statutory criteria for certification</u>," Def.'s Resp. Opp'n at 23 (citing Am. Admin. R. at 11 (confidential version)) whereas in the investigation at bar, "Labor . . . determined that <u>none of the employees that left Henderson during</u> <u>the period investigated was involved in production</u>[.]"  Def.'s Resp. Opp'n at 23 (citing Admin. R. at 39 (confidential version) (emphasis supplied)).

### 2.   Plaintiffs Did Not Qualify as
###      Support Service Workers

Plaintiffs who do not produce an article (product) are eligible for TAA certification as "support service workers" if:

(1) their separation was caused importantly by a reduced demand for their services from a parent firm, a firm otherwise related to the subject firm by ownership, or a firm related by control;

(2) the reduction in the demand for their services originated at a production facility whose workers independently met the statutory criteria for certification; and

(3) the reduction directly related to the product impacted by imports.

Former Employees of Chevron Prods. Co. v. United States Sec'y of Labor, 2002 Ct. Intl. Trade LEXIS 129, *37, Slip. Op. 02-131 (Oct. 28, 2002) (citing Bennett, 20 CIT at 792; Abbott, 6 CIT at 100-01, 570 F. Supp. at 49).[16]

_____

[16] The Court disagrees with plaintiffs' argument that "neither [19 U.S.C. § 2272(a)] nor case law supports [Labor's] legal argument," Pls.' Resp. at 10, that certification of plaintiffs as support service workers is precluded because "no production employee independently qualified for certification[.]" Def.'s Resp. Opp'n at 17; see Abbott, 6 CIT at 100-01, 570 F. Supp. at 49 (citing Woodrum, 5 CIT 191, 564 F. Supp. 826) ("the Court must accord substantial deference to the interpretation of the statute [19 U.S.C. § 2272(a)] by the agency [Labor] charged with its administration"); Bennett, 20 CIT at 792 (stating in pertinent part that "plaintiff[s] are eligible for certification [as support service workers] when . . . their separation is caused by a reduced demand for their services from a production department whose workers independently meet the statutory criteria for certification" and holding that "Labor permissibly and reasonably interpreted [19 U.S.C. § 2272(a)] in formulating the test for certifying support service workers").

In the case at bar, Labor determined in its initial investigation that "[n]one of [Henderson's] customers increased import purchases of parts for sewing machines, while decreasing purchases [from] [Henderson]." Admin. R. at 19. Labor further reasoned that:

> Workers of [Henderson] may be certified only if their separation was caused importantly by a reduced demand for their services from a parent firm, a firm otherwise related to the subject firm by ownership, or a firm related by control. Additionally, the reduction in demand for services must originate at a production facility whose workers independently meet the statutory criteria for certification and the reduction must directly relate to the product impacted by imports. These conditions have not been met for workers performing services at [Henderson].

Id. at 21. Additionally, subsequent to the remand investigation, Labor issued its "Notice of Negative Redetermination on Remand" affirming Labor's initial notice of negative determination, see Negative Determination I, 66 Fed. Reg. at 47,241, and stated:

> The results of the investigation on remand revealed that during the relevant period, [Henderson] laid off a total of two administrative workers. Another five workers left on their own accord, due to various personal reasons. None of these workers were engaged in the manufacture of any product while employed at the subject facility.

Id. at 41.

The Court finds that Labor's determinations are supported by substantial record evidence and are in accordance with law. In particular, the record reveals that: (1) Henderson's vice president

responded to Labor's "Business Confidential Data Request" form on two occasions (that is, during the initial investigation and the remand investigation) and in both instances stated that Henderson produced a certain article but provided no production data, Admin. R. at 11-13, 29-32 (confidential version) (emphasis supplied); (2) one of Henderson's customers that was surveyed by Labor during the initial investigation provided that for the period of January to June 2001, there was an increase in the value of purchases of sewing machines from Henderson and a decrease in value of sewing machines from other domestic sources (the sewing machines purchased from the other domestic sources were manufactured mostly in a foreign country), see Admin. R. at 14 (confidential version) (emphasis supplied); (3) another customer of Henderson surveyed by Labor during the initial investigation only supplied data depicting a decrease in the value of purchases of sewing machine parts from other domestic sources but did not supply any data with regards to Henderson nor foreign sources, see id. at 16 (confidential version); (4) another customer of Henderson surveyed by Labor during the initial investigation and later in the remand investigation did not supply any data and stated that the company had closed, see id. at 17, 37 (confidential version); (5) during the remand investigation Labor contacted the various customers of Henderson who responded that Henderson was involved in sales and distribution of sewing machines and parts, see Admin. R. at 33, 34,

36 (confidential version); (6) another customer of Henderson surveyed by Labor during the remand investigation only supplied data depicting a decrease in the quantity and value of purchases of sewing machines from other domestic sources (the sewing machines purchased from the other domestic sources during the period of 1999 through 2001 were increasingly being manufactured mostly in a foreign country) but did not supply any data with regards to Henderson nor foreign sources, see Admin. R. at 38 (confidential version); and (7) during the remand investigation, Henderson's vice president responded to Labor in a letter explaining in pertinent part that the two plaintiffs in the case at bar were terminated from their employment at Henderson while another five employees left for reasons other than being terminated. See Admin. R. at 39 (confidential version).

Based on the record evidence, the Court finds that Labor could reasonably conclude as it did in the instant case that plaintiffs did not qualify as support service workers because inter alia: (1) "no production employee independently qualified for certification[,]" Def.'s Resp. Opp'n at 17, and (2) "the record indicates that the plaintiffs' did not lose their jobs because imports affected an article Henderson produced."[17] Id.

---

[17] The Court notes that plaintiffs fail to point to record evidence to support a contrary result (that is, that plaintiffs
(continued...)

>    3.    **Henderson Did Not Produce an Article Affected by Increased Imports That Contributed Importantly to Plaintiffs' Separation from Henderson**

Finally, the Court also finds Labor's determination that Henderson did not produce an article affected by increased imports that contributed importantly to plaintiffs' separation from Henderson as supported by substantial evidence. The record evidence provides that: (1) Henderson's vice president signed a petition for TAA on behalf of the plaintiffs on June 29, 2001, indicating a response of "textile industry" to a question asking for "a description of the articles (products) produced by [Henderson]," and to "include such information as the common and technical names of the articles [as well as] the method of manufacture[,]" Admin. R. at 1; (2) Henderson's vice president responded to Labor's "Business Confidential Data Request" form on two occasions (that is, during the initial investigation and the remand investigation) and in <u>both instances</u> stated that Henderson produced a certain article <u>but provided no production data</u>, Admin. R. at 11-13, 29-32 (confidential version) (emphasis supplied); (3) one of Henderson's customers that was surveyed by Labor during the initial investigation provided that for the period of January to June 2001, there was an <u>increase</u> in the value of purchases of sewing machines from Henderson and a <u>decrease</u> in value of sewing

---

[17](...continued)
qualify as support service workers).

machines from other domestic sources (the sewing machines purchased from the other domestic sources were manufactured mostly in a foreign country), see Admin. R. at 14 (confidential version) (emphasis supplied); (4) another customer of Henderson surveyed by Labor during the initial investigation only supplied data depicting a decrease in the value of purchases of sewing machine parts from other domestic sources but did not supply any data with regards to Henderson nor foreign sources, see Admin. R. at 16 (confidential version); (5) another customer of Henderson surveyed by Labor during the initial investigation and later in the remand investigation did not supply any data and stated that the company had closed, see Admin. R. at 17, 37 (confidential version); (6) another customer of Henderson surveyed by Labor during the remand investigation only supplied data depicting a decrease in the quantity and value of purchases of sewing machines from other domestic sources (the sewing machines purchased from the other domestic sources during the period of 1999 through 2001 were increasingly being manufactured mostly in a foreign country) but did not supply any data with regards to Henderson nor foreign sources, see Admin. R. at 38 (confidential version); (7) during the remand investigation Labor contacted the various customers of Henderson who responded that Henderson was involved in sales and distribution of sewing machines and parts, see Admin. R. at 33, 34, 36 (confidential version); and (8) during the remand investigation

Henderson's vice president responded in a letter describing Henderson's business as mostly involving sales and distribution of sewing machines and parts rather than production. See Admin. R. at 39 (confidential version). Additionally, Cobb's letter with enclosures deemed a summons and complaint by this Court states in pertinent part that Henderson "does not produce products, [but] . . . . res[ells] commercial sewing machines and parts to sewing factories."[18]

---

[18] Plaintiffs raise a number of arguments and assert that the record does not support Labor's conclusions that Henderson does not produce an article, let alone one that was affected by increased imports. The Court disagrees with plaintiffs and addresses plaintiffs' arguments as follows.

First, plaintiffs raise two arguments with regards to a handwritten notation that appears in the margin of the letter provided by Henderson's vice president during the remand investigation. See Admin. R. at 39 (confidential version). In particular, plaintiffs contend that "[t]here is no evidence in the record that Henderson actually provided such information to Labor[,]" Pls.' Resp. at 6 (citing Admin. R. at 39 (confidential version)), and that "the issue is not whether production is negligible, but whether production has become affected by imports." Pls.' Mot. at 10; see also Pls.' Mot at 10-11 and Pls.' Resp. at 7-8.

The Court disagrees with plaintiffs' arguments with regards to the handwritten notation that appears in the margin of the letter provided by Henderson's vice president because as Labor correctly points out, "reliance upon unverified statements of company officials constitutes substantial evidence in the absence of contradictory information[.]" Def.'s Resp. Opp'n at 24-25 (citing United States Steel Workers of Am., Local 1082, 15 CIT at 123; see also supra Discussion Part I, C (Analysis) n.14 (quoting Former Employees of Kleinerts, Inc., 23 CIT at 651, 74 F. Supp. 2d at 1285 (quoting in turn S. Rep. No. 93-1298, 93rd Cong., 2nd Sess. at 133 ("[a]ccording to the Senate Report to the Trade Reform Act of 1974,

(continued...)

Accordingly, the Court finds that Labor properly issued its
"Notice of Negative Redetermination on Remand" affirming Labor's
initial notice of negative determination and stating in pertinent
part:

> [T]he overwhelming portion of the activities performed at
> [Henderson] relates to the sales of industrial sewing
> machines and related parts.  The company also produces
> components that attach to the sewing machine (value
> added) before they are sold.  The company indicated that
> this is a negligible portion of the total functions
> performed at the subject facility.

---

[18](...continued)
while a 'cause may have contributed importantly even though it
contributed less than another single cause[, it still] must be
significantly more than _de minimis_ to have contributed
importantly'")).  Reviewing the record evidence as a whole, the
Court finds that the plaintiffs have not demonstrated that Labor's
finding regarding Henderson's production situation resulted from
anything other than a reasonable conclusion supported by
substantial evidence. (Emphasis supplied).

Second, plaintiffs argue that Henderson's "sales declined and
imports directly competitive with Henderson's . . . articles
contributed importantly to such decline."  Pls.' Mot. at 16.
Plaintiffs argue _inter alia_ that the same conditions that existed
in the 1998 investigation of Henderson exist in the investigation
at bar (that is, just as in the 1998 investigation of Henderson,
the current investigation reveals that pursuant to 19 U.S.C. §
2272(a)(3), "[t]he increase in imports . . . contribute[d]
importantly to the decline in sales or production and the
separation of employees").  _Id._ at 16 (citing Am. Admin. R. at 7-8
(confidential version) and Admin. R. at 11 (confidential version).

As the Court previously pointed out, see supra Discussion Part
I, C1 (Analysis) n.15, the Court is not persuaded by plaintiffs'
argument that Henderson is the same company in the investigation at
bar as it was in the 1998 investigation.  Additionally, plaintiffs
again fail to point to record evidence supporting their argument
that imports contributed importantly to plaintiffs' separation from
Henderson.

Admin. R. at 41; see <u>Negative Determination II</u>, 67 Fed. Reg. at 18,928.

## CONCLUSION

Based on a careful examination of the record as a whole, this Court sustains Labor's initial negative determination (<u>Negative Determination I</u>, 66 Fed. Reg. 47,240) and Labor's subsequent negative determination on remand (<u>Negative Determination II</u>, 67 Fed. Reg. 18,927) denying plaintiffs' certification of eligibility for trade adjustment assistance as supported by substantial evidence and in accordance with law. This case is dismissed.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE


Dated:     March 25, 2003
           New York, New York